Robert Anthony REED III, et al.,
Plaintiffs-Appellees,

v.

CLEVELAND BOARD OF EDUCATION
et al., Defendants-Appellants.

Nos. 78–3670, 79–3203.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1979.

Decided Aug. 23, 1979.

George I. Meisel, James P. Murphy, Squire, Sanders & Dempsey, John H. Bustamante, Bustamante, Donohoe, Palmisano & Co., L. P. A., Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, James L. McCrystal, Jr., Cleveland, Ohio, for defendants-appellants.

James L. Hardiman, Teresa Demchak, Cleveland, Ohio, Thomas I. Atkins, Boston, Mass., Nathaniel R. Jones, NAACP, New York City, Jeremiah Glassman, John C. Hoyle, Civ. Rights Div., Dept. of Justice, Washington, D.C., for plaintiffs-appellees.

Before EDWARDS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

EDWARDS, Chief Judge.

■ The Cleveland Board of Education and its members appeal from two separate civil contempt orders of the United States District Judge before whom the Cleveland school racial segregation case has been in trial. The contempt adjudications arise out of Board actions or inactions directly concerned with desegregation orders issued by the District Judge. *See Reed v. Rhodes,* 422 F.Supp. 708 (N.D.Ohio 1978) (*Reed I*); 455 F.Supp. 546 (N.D.Ohio 1978) (*Reed II*); 455 F.Supp. 568 (N.D.Ohio 1978) (*Reed III*). Since the last cited District Court opinion preceded these contempt adjudications, we treat both contempt adjudications as final and appealable. *See* 15 C. Wright, A. Miler & E. Cooper, Federal Practice and Procedure § 3917 at 628–29 (1976).

■ The appeal from the contempt order of February 7, 1979, based upon the failure of the Board and its members to file a student disciplinary code by February 5, 1979,[1] can be disposed of summarily. We hold that the February 7, 1979, order must be vacated because it was entered without notice or hearing, in violation of the due process clause of the Fifth Amendment to the United States Constitution. This court, in *Consolidation Coal Co. v. Local U. No. 1784, U.M.W.,* 514 F.2d 763, 765 (6th Cir. 1975), quoted with approval the D.C. Circuit's statement in *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostock R.R.,* 127 U.S.App.D.C. 23, 380 F.2d 570 (D.C.Cir.), *cert. denied,* 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967), that:

> Like any civil litigant, a civil contemnor is, however, clearly entitled to those due process rights, applicable to every judicial proceeding, of proper notice and an impartial hearing with an opportunity to present a defense.

*Id.* 127 U.S.App.D.C. at 34, 380 F.2d at 581. (Footnote omitted.)

■ The contempt order of October 27, 1978, concerning certain School Board employment decisions does not, however, pose as simple a problem. This order was issued on October 27, 1978, and was based upon Board actions of September 29, 1978, discharging two members of the Department of Desegregation Implementation and reducing the salaries of two others without prior notice to or approval by the United States District Court. The facts which led to this contempt order are undisputed. The Board acknowledges that it dismissed Doreen V. Blanc and Daniel Purnell, codirectors of the division of educational training and strategies in the Department of Desegregation Implementation, and reduced the salaries of Alfred Tutella and Wayne Howard, two other operational division directors, from $35,000 to $28,800 per year. The Board admits that it did not notify or receive the District Judge's permission *before* it acted, but does insist (and the record shows that the District Judge agreed) that its attorney notified the Judge by telephone the day after the Board had carried out the firings and salary reductions.

The District Court first entered an order concerning the Department of Desegregation Implementation on December 21, 1977. That order required the Board to set up such a department which would be headed by a deputy superintendent and would include at least seven operational units. The order also listed duties of the deputy superintendent and his department and gave the superintendent authority to hire the heads of the seven units.

The District Court reaffirmed the December 21 order in its comprehensive remedial order of February 8, 1978. *See Reed III, supra* at 605–06. The Court amended the portion of the December 21st order which dealt with the hiring of the unit heads to read:

> The Deputy Superintendent shall recommend to the Board, and the Board shall elect and appoint, subject to Court approval, individuals to head the operation-

---

1. The Board did file its proposed student disciplinary code on February 9, 1979, and with minor changes it was approved by the District Court. As a consequence, no remand for further proceedings is required.

al units mentioned in Paragraph 2 above. *Any action taken by the Board of Education or its administration in regard to the duties, tenure, salary, employment or discipline of these individuals, including the Deputy Superintendent, shall be reported and subject to the approval of this Court until further order of this Court.* As long as a conflict with this or any other Order is not created thereby, the mandates of the Ohio Revised Code and State and local rules and regulations governing employment, salaries, tenure, and discipline of personnel shall be followed.

*Id.* at 606. (Emphasis added.)

When the Board did not come forward promptly with appointments to fill the seven positions, the District Court, on April 21, 1978, without hearing, ordered the Board to hire seven named individuals at specified salaries.

On appeal this Court, on July 6, 1978, vacated that order as violative of due process and remanded the case to the District Court for hearings. *Reed v. Cleveland Board of Education*, 581 F.2d 570 (6th Cir. 1978). No hearings were held, however, as counsel for plaintiffs and defendants reached an agreement on a stipulation dated August 2, 1978, which was subsequently filed with the District Court. The stipulation does not cover procedures with regard to hiring or changes in tenure or salary of the seven operation heads.

At the contempt hearing counsel for the Board stated to the District Court the following:

The question was raised with respect to the seven employees only. I did advise Mr. Atkins they were on the payroll, they were on the payroll as any other employee of the School Board.

I saw no reason as to enter into any stipulation. Mr. Atkins made it clear, I reported to the Board, if any action was taken in regard to any of the seven, the plaintiffs would consider it necessary to come to the Court.

The School Board's contention that no order existed which required court approval for its actions in regard to the four unit heads turns on the use of the words "these individuals" in the February 8th order of the court. The defendants argue that "these individuals," for whom court approval was necessary, were only those persons hired by the procedures specified in the February 8th order. Since the four unit heads involved in this appeal were not hired by the procedures detailed in the order (but instead by the vacated April 21st order), the Board reasons that the commands of the order to report and seek approval of "any action . . . in regard to the duties, tenure, salary, employment or discipline of these individuals" are not applicable. Additionally, the Board argues that the April 21st order was a "further order of this [the District] court" (*See Reed III, supra* at 606) which superseded the February 8th order. When this court vacated the April 21st order, there was no automatic reinstatement of the February 8th order. Therefore, the Board contends, no order existed which required any specific procedures with regard to the Department of Desegregation Implementation except for the stipulation of August 2, 1978, and it did not require any prior notification before the Board terminated or reduced salaries of any of the seven unit heads.

Plaintiffs argue, however, that the Board's interpretation of the February 8th order is incorrect. They assert the sentence specifying the procedures for hiring the unit heads is independent of the sentence mandating court approval of any actions taken by the Board against those employees. Thus, they contend the vacated April 21st order which required the hiring of the seven individuals might properly be read as superseding the first sentence of the February 8th order, but not as affecting the second sentence which required court approval of actions concerning the unit heads. Under this reading the requirement of court approval would remain in effect. We note, however, that the February 8th order is entirely ambiguous as to whether the court approval called for must precede or follow Board action.

■ We hold that this civil contempt order also must be vacated on due process grounds. The plaintiffs' highly technical construction of the portion of the District Judge's order of February 8, 1978, which is claimed to have remained effective after this court's opinion in *Reed v. Cleveland Board of Education*, 581 F.2d 570 (6th Cir. 1978), does not serve to support civil contempt. The notice of a judicial order upon violation of which a contempt finding may properly be based is such notice as would clearly tell a reasonable person what he is required to do or abstain from doing. This was not the situation in our instant case. As of the date of the Board's alleged contempt, the Board might well have believed that due to this court's vacating of the April 21st order, it was under no legal obligation to continue the employment at any particular salary of the individuals named by the District Judge in the April 21, 1978, order.

Nor can the gaps in this record be considered to be filled by the stipulation signed by the parties after remand of the subject matter of the April 21, 1978, order. We have examined the stipulation relied on by plaintiffs and find nothing therein by which the Cleveland Board agreed to keep the currently disputed employees on the payroll at rates of pay originally set by the District Judge.

■ Nor in our view could the District Judge or plaintiffs appropriately rely upon plaintiffs' counsel's oral warning to defendants' counsel at the stipulation discussion that *plaintiffs* would consider it necessary to come to court "if any action was taken in regard to any of the seven." Plainly, defendants were required to obey the District Judge's orders, but they were not required to obey the interpretations of the District Judge's orders made by plaintiffs.

Finally, the Board could contend that in any event it complied with the notice requirement of the February 8th order, since it did inform the District Judge through its counsel on the next day following its action.

The District Judge did not respond to that notice by disapproving the Board's action or by entering a restraining order.[2]

In *ILA, Local 1291 v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967), the United States Supreme Court in a contempt case pointed out the importance of strict District Court adherence to Rule 65(d) of the Federal Rules of Civil Procedure to avoid just the sort of situation we have in this case:

Rule 65(d) of the Federal Rules of Civil Procedure was designed to prevent precisely the sort of confusion with which this District Court clouded its command. That rule provides:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

389 U.S. at 74–75, 88 S.Ct. at 207.

In the same case the opinion for the Court reminded us:

The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. Because the decree of this District Court was not so framed, it cannot stand. And with it must fall the District Court's decision holding the union in contempt.

*Id.* at 76, 88 S.Ct. at 208.

---

2. We do not now decide whether or not after notice and hearing injunctive relief from the

Board's action might then have been or might now still be appropriate.

The two contempt orders from which appellants Cleveland Board of Education, et al., appeal are vacated and the cases are remanded to the District Court for dismissal of the complaints.