**Robert Anthony REED, III, et al.,
Plaintiffs-Appellees,**

v.

**CLEVELAND BOARD OF EDUCATION
et al., Defendants-Appellants.**

No. 78–3218.

United States Court of Appeals,
Sixth Circuit.

Argued June 20, 1978.

Decided July 6, 1978.

George I. Meisel, Charles F. Clarke, William C. Hartman, Squire, Sanders & Dempsey, Cleveland, Ohio, John H. Bustamante, Bustamante, Donohoe, Palmisano & Co., LPA, Cleveland, Ohio, for defendants-appellants.

Nathaniel R. Jones, General Counsel, NAACP, New York City, Thomas I. Atkins, Atkins & Brown, Boston, Mass., Teresa Demchak, James L. Hardiman, Cleveland, Ohio, Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, Jeremiah Glassman, John C. Hoyle, Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., Vincent Campanella, Victor DeMarco, Dennis M. Kelly, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for plaintiffs-appellees.

Robert T. Baker, Michael J. Loughman, Means, Bichimer, Burkholder & Baker Co., L. P. A., Columbus, Ohio, for amici curiae Ohio School Boards Ass'n & Buckeye Ass'n of School Administrators.

Before EDWARDS, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

The present appeal is from one of the many orders which the district court has issued in the ongoing action seeking judicial desegregation of the school system of Cleveland, Ohio. After lengthy proceedings the district court rendered a decision on August 31, 1976 holding the Cleveland Board of Education and certain officials of the State of Ohio liable for violating the constitutional rights of the plaintiffs and the class they represented. *Reed v. Rhodes,* 422 F.Supp. 708 (N.D.Ohio 1976).

Thereafter, on December 7, 1976, the district court entered an order issuing guidelines for the formulation of desegregation plans "consistent with the overriding constitutional duty to desegregate the Cleveland School System." The guidelines directed that plans to be formulated by the defendants should provide for the desegregation of

every school in the system and that desegregation of all grades be completed at the earliest practicable date, in no event later than September, 1977. They further provided that "[t]he racial composition of the student body of any school within the system shall not substantially deviate from the racial composition of the system as a whole."

The defendants appealed to this court from the liability judgment of August 31, 1976. Noting the intervening decisions of the Supreme Court in *Dayton Board of Education v. Brinkman,* 433 U.S. 406, 97 S.Ct. 2766, 53 L.Ed.2d 851 (1977), and *Brennan v. Armstrong,* 433 U.S. 672, 97 S.Ct. 2907, 53 L.Ed.2d 1044 (1977), this court remanded the case to the district court for reconsideration. The order of remand was entered on July 20, 1977.

On February 6, 1978, the district court filed an opinion on remand finding that all defendants "are constitutionally liable for having maintained a *de jure* segregated public school system, consisting almost entirely of racially identifiable schools." During the period between the original decision of the district court (August 31, 1976) and the decision on remand (February 6, 1978) a number of steps were taken in the desegregation case. These steps included the submission of a series of plans for desegregation by the Cleveland Board and at least one such plan by the State Board. The first two plans submitted by the Cleveland Board were rejected by the district court as inadequate. The third plan was submitted on May 13, 1977 to a special master appointed by the district court. On October 28, 1977, the special master reported to the court with recommendations concerning the Cleveland Board's third plan, filed five months previously and the State Board's plan which had been filed nine months earlier. On December 21, 1977, the district court announced its intention to appoint a deputy superintendent of the Cleveland schools for desegregation implementation.

On February 8, 1978, two days after issuance of the remand opinion on liability, the district court entered the first comprehensive remedial order in the litigation dealing with pupil assignment and transportation. These features of the remedial order were based in large part on the third plan of the Cleveland Board and the plan of the State Board with modifications recommended by the special master. By an order of March 7, 1978 the district court directed the Cleveland Board to appoint Dr. Charles W. Leftwich as deputy superintendent for desegregation implementation for a period of four years, effective April 10, 1978. The Cleveland Board did not appeal or attempt to stay this order and did contract with Dr. Leftwich as directed. On April 7, 1978 Dr. Leftwich, by memorandum to the Board, requested the appointment of seven persons to positions described in the memorandum at salaries set forth therein. None of these persons was an employee of the Cleveland school system. Though Dr. Leftwich agreed to furnish the Board with information concerning the experience and qualifications of the persons recommended for these new positions, this information had not been received by April 21st.

On April 21, 1978 the district court issued the order which is the subject of the present appeal. This order was entered without notice to the parties and without a hearing. No party had moved the court for entry of such an order, but it was based largely on recommendations of the special master which were made to the presiding judge on the same day. No notice of these recommendations was given to the parties. The April 21, 1978 order is set out in full:

Upon consideration of the recommendations of the Special Master filed this date, it is hereby ordered that:

1. The Cleveland Board of Education shall immediately hire the seven individuals who have heretofore been recommended to the Board by the Deputy Superintendent. These employees shall be paid the salaries recommended by the Deputy Superintendent.

2. The following departments in the Cleveland school administration shall be placed under the direct supervision and control of the Department of Desegrega-

tion Implementation in the following manner:

a. The Business Department shall be placed under the supervision and control of the Division of Fiscal Planning.

b. The Computer Department shall be placed under the supervision and control of the Division of Student Logistics. The Head of this Division shall have control over all operation and use of the computer.

c. The Research and Development Department shall be placed under the supervision and control of the Division of Program Development, Educational Strategies and Training.

d. The Case Information Management System Center shall be placed under the supervision and control of the Division of Program Development, Educational Strategies, and Training.

e. The Community Relations Department shall become an operational unit of the Department of Desegregation Implementation.

3. The Clerk-Treasurer of the Cleveland School Board shall establish separate funds for all desegregation implementation monies, programs and activities. All desegregation implementation monies, federal, state and local, shall be placed in bank accounts separate from other monies of the system.

4. With the exception of the seven persons referred to in paragraph 1 of this order, the Cleveland Board of Education shall hire all persons recommended by the Deputy Superintendent for Desegregation Implementation within 72 hours after said recommendations are transmitted to the President or Clerk-Treasurer of the Board. These persons shall be hired at the salary rates recommended by the Deputy Superintendent and shall receive the same fringe benefits as persons on a comparable administrative level. In connection with each employment recommendation, the Deputy Superintendent shall provide the Board with a job description, resume, and at least one work-related personal recommendation.

5. All work product, plans, and other information pertaining to desegregation shall be submitted promptly to the Deputy Superintendent. All future desegregation planning for the School District from this date forward shall be done *only* under the direction of the Deputy Superintendent for Desegregation Implementation and his staff. All instructions of the Deputy shall receive immediate attention and be promptly implemented by the appropriate individuals in the School System.

The effect of paragraph 2 of the order would be to place existing departments of the school administration either directly under the Department of Desegregation Implementation or under newly created divisions of that department, to be directed by persons ordered hired in paragraph 1 of the order.

On April 26, 1978 the District Judge filed a "Supplemental Memorandum Re Order Entered April 21, 1978." In this memorandum the district court referred to previous findings that "the Cleveland defendants do not possess either the expertise, experience or willingness to comply with this Court's orders without outside assistance." The court found that it was "absolutely essential" to order the hiring of the persons recommended by Dr. Leftwich and to place certain departments under his control and supervision "during the interim period of desegregation implementation." The supplemental memorandum provided that Dr. Leftwich would retain the authority given by the court until "such time as the Cleveland School System has become one, unitary, integrated system." It also provided for return of any of the specified departments to normal board control upon a showing "by clear and convincing evidence" that it was not essential to the planning and implementation of desegregation.

The Cleveland Board and its superintendent filed a notice of appeal from the April 21st order "pursuant to Title 28 U.S.C. § 1291 or, in the alternative, 28 U.S.C. § 1292(a)(1)." They also filed a motion in this court to stay the order. The motion to

stay was denied and this appeal was expedited.

■ We deal first with the contention of the appellees that the order was an interim planning order which was not appealable. They refer only to 28 U.S.C. § 1291 and 28 U.S.C. § 1292(b). Section 1291 applies to final judgments and section 1292(b) to orders which are otherwise not appealable. However, 28 U.S.C. § 1292(a)(1), cited in the defendants' notice of appeal, grants jurisdiction to courts of appeals over appeals from interlocutory orders of district courts "granting, continuing, modifying, refusing or dissolving injunctions, . . . ." The April 21st order clearly granted a mandatory injunction. It was an appealable order and this court has jurisdiction of the appeal.

■ The Federal Rules of Civil Procedure provide for the issuance of a temporary restraining order without notice where there is compliance with the stringent requirements of Rule 65(b). Otherwise the rules contain no provision for *ex parte* injunctive orders. Rule 65(a)(1) requires notice prior to the entry of a preliminary injunction. We have held that this rule "contemplates that the issuance of a preliminary injunction shall be upon notice to the adverse party and after a hearing. A hearing embodies the right to be heard on the controverted facts, as well as upon the law." *Carpenters' District Council v. Cicci,* 261 F.2d 5, 8 (6th Cir. 1958) (citation omitted). However, entry of the interest order without notice goes beyond a failure to follow Rule 65. The Supreme Court has stated that the Rule 65(b) restrictions "on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974). The appellees do not contend that the April 21st order was a temporary restraining order. We conclude that it was a preliminary injunction which required notice and an opportunity for a hearing.

This court certainly recognizes the unique nature of protracted school desegregation cases. Many situations arise in the course of such litigation which require immediate action by the court. It is not the purpose or intent of the court by this decision to indicate that district courts which are involved in enforcing the equal protection requirements of the Constitution lack power to deal with any and all violations. As the Supreme Court stated in *Swann v. Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), "Once a right and a violation have been shown, the scope of the district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." However, we find nothing in the record of the present case to indicate that an order drastically restructuring the administration of the Cleveland school system should have been entered without notice and a hearing. The district court's earlier finding that the Board lacked expertise, experience and willingness to comply with desegregation orders without outside assistance was made prior to the adoption of a remedial order. As we have pointed out, the comprehensive remedial order had been entered only two and one-half months earlier, after being under consideration by the special master and the court for a period of seven months. Furthermore, the deputy superintendent for desegregation implementation, to whom the April 21st order gave direct supervision and control over much of the operation of the system, had been in office less than two weeks. There is no indication that the delay attendant upon a hearing with respect to recommendations of the special master would have caused such injury as to justify *ex parte* action.

In urging affirmance of the April 21st order the plaintiffs have cited *Morgan v. Kerrigan,* 530 F.2d 401 (1st Cir.), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 386 (1976), and *Morgan v. McDonough,* 540 F.2d 527 (1st Cir. 1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 743, 50 L.Ed.2d 755 (1977). These are decisions in two appeals

from district court orders in the litigation seeking desegregation of the Boston school system. In the Boston case the liability phase came to an end when the Supreme Court denied certiorari in 1974 following affirmance by the court of appeals of a judgment finding constitutional violations. The remedial order appealed from in *Kerrigan, supra,* was entered on May 10, 1975 following hearings on a masters' report which had been filed after the court-appointed masters held lengthy hearings. One provision of the remedial order which was challenged on appeal required the hiring of a number of additional supervisory personnel. Also attacked was the use of court-appointed experts to supervise certain features of the remedial plan. It was claimed that these orders interfered unreasonably with the powers of the school board. The court of appeals found that these orders gave the court-appointed experts "an unusual, if brief, amount of power," but determined that the intransigent opposition of the school committee to court orders and its delay in implementing the May 10, 1975 plan justified such measures. 530 F.2d at 430.

In *Morgan v. McDonough, supra,* the appeal was from an order placing one Boston high school in temporary receivership and directing the transfer of some of its staff, without reduction in pay. The plaintiffs made a motion to close the school on the ground that black students assigned there were being denied "a peaceful, integrated and nondiscriminatory education." The District Judge conducted lengthy hearings on the motion, which included visits to the high school. On the basis of these hearings he concluded that the basic claims of the plaintiffs were substantiated. However, he declined to close the school and appointed a senior official of the Boston school system temporary receiver of the school. Later the superintendent of the Boston schools was substituted as receiver. The court of appeals upheld the appointment of the receiver upon a finding that the week-long hearings conducted by the district court produced evidence of tension, violence and disruption at the school, abuse of black students and ineffective leadership by the headmas-

ter. The court again noted the resistance of the school authorities to desegregation of the Boston schools and emphasized the extreme urgency of the situation at South Boston High School. Finding that the orders in question were proper under the circumstances, the court nevertheless added this caveat:

> Obviously the substitution of a court's authority for that of elected and appointed officials is an extraordinary step warranted only by the most compelling circumstances. 540 F.2d at 535.

The differences between the orders referred to in the two Boston cases and the April 21st order in the present case are clear. Each of the orders in the Boston case was preceded by hearings and findings of the district court. Although these orders made administrative changes in the school system, none went so far as to deprive the elected and appointed officials of all discretion as to the identity and compensation of personnel ordered hired by the court. There was no order of such breadth as the one in the present case which requires the Cleveland Board to hire "all persons recommended by the Deputy Superintendent for Desegregation Implementation within 72 hours after said recommendations are transmitted to the President or Clerk-Treasurer of the Board." Nor did any of the orders direct a broad realignment of administrative departments within the school system without an opportunity for input by the regularly appointed administrators.

The plaintiffs also contend that *United States v. Board of School Commissioners of Indianapolis,* 503 F.2d 68 (7th Cir. 1974), *cert. denied,* 421 U.S. 929, 95 S.Ct. 1654, 44 L.Ed.2d 86 (1975), provides support for the April 21st order. In the Indianapolis case the court of appeals found that nearly two years after *de jure* segregation had been found to exist the school board submitted a plan which did not promise realistic immediate relief. After holding an evidentiary hearing in late August 1973 the district court found that the school board was unable or unwilling to comply with its orders. The district court then appointed a two-man commission to prepare a desegregation plan and assigned the professional planning

staff of the school board to the temporary commission. In just ten days the commission filed an interim plan. The court of appeals affirmed, finding that the district court did not abuse its discretion. Again, as with the Boston cases, there are many differences between the present appeal and the case before the Seventh Circuit. The district court in the Indianapolis case held a hearing before issuing the orders relating to the temporary commission. In the present case the order in question appears to rest exclusively on an *ex parte* report of the special master and is not tied in any way to an evidentiary hearing. Further, there is a great difference between an order which creates an outside planning commission and assigns school employees temporarily to assist the commission while formulating a desegregation plan and one which rearranges the administrative structure of an entire school system.

The Supreme Court has often emphasized the importance of retaining local control of school affairs and working through local authorities in achieving court-ordered desegregation. In *Milliken v. Bradley,* 418 U.S. 717, 741–42, 94 S.Ct. 3112, 3125, 41 L.Ed.2d 1069 (1974), the Court stated:

> No single tradition in public education is more deeply rooted than local control over operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public schools and to quality of the educational process. (citations omitted).

See also *Dayton Board of Education v. Brinkman,* 433 U.S. 406, 410, 97 S.Ct. 2766, 53 L.Ed.2d 851 (1977); *Wright v. City Council of Emporia,* 407 U.S. 451, 469, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972).

The desire of the District Judge to get on with the implementation of a plan is understandable, as is his impatience with the performance of the Cleveland Board and some of the administrators. It is true that the Cleveland Board has staunchly denied any intent to discriminate and has been reluctant to embark on a systemwide reassignment of students. However, this is quite different from the total intransigence and hostility to change which appear to have existed in both the Boston and Indianapolis boards. The limited record which we currently have before us does not support a finding of obstinate and obdurate conduct by the Cleveland Board. In fact, on May 27, 1977 the special master filed an interim report in which he commented on the cooperation of the superintendent and deputy superintendent of the Cleveland system. Implementation of desegregation of faculty and administrative and clerical staff of the Cleveland system was completed in September 1977. Particularly in view of this court's remand of the district court's liability findings for further consideration in the light of *Brinkman* it was not unreasonable for the Board to conclude that the scope of the remedy to be applied in the present case was uncertain until the order on remand and the remedial order were filed in February 1978. The laws of Ohio entrust the operation of schools to locally elected boards and the administrators whom they appoint. The present record does not reflect the existence of circumstances so compelling as to justify an order effectively removing the Board and its appointees from operating control of the school system.

The order of April 21, 1978 is vacated, and the cause is remanded to the district court for further proceedings.