**FIRST TECHNOLOGY SAFETY SYSTEMS, INC., a Michigan Corporation, Plaintiff–Appellee,**

v.

**Paul DEPINET; Steven Fuhr; Barry Wade; Vector Research, Inc., Defendants–Appellants.**

No. 93–3019.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 19, 1993.

Decided Dec. 15, 1993.

Jennifer J. Dawson, Marshall & Melhorn, Toledo, OH, Jon D. Kreucher, and Jon H. Kingsepp (argued and briefed), William J. Clemens, Howard & Howard, Bloomfield Hills, MI, for plaintiff-appellee.

Jack G. Fynes, Stephen A. Rothschild (argued and briefed), Shumaker, Loop & Kendrick, Toledo, OH, for defendants-appellants.

Before: KENNEDY, MILBURN, and GUY, Circuit Judges.

MILBURN, Circuit Judge.

Defendants appeal the district court's order denying their motion to vacate an order granting plaintiff's request for immediate ex parte order of inventory and impoundment. On appeal, the issue is whether the district

court abused its discretion in refusing to vacate its ex parte order, which permitted plaintiff and its counsel, accompanied by the United States Marshal, to enter defendants' business premises and inventory and impound computer programs, computer printouts, and documents bearing the name of plaintiff or its predecessor, and to copy and inventory defendants' business records (purchase orders, invoices, correspondence, customer lists, and customer information materials). For the reasons that follow, we reverse and remand.

## I.

On April 3, 1992, plaintiff First Technology Safety Systems, Inc. ("FTSS") filed a verified complaint against defendants for unfair competition, unfair trade practices, conversion, receiving and concealing trade secrets, tortious interference with contract or business advantage, breach of contract, and copyright infringement. At the same time, plaintiff filed an emergency motion for ex parte order of seizure and impoundment of evidence, which stated

> [p]ursuant to 17 U.S.C. § 503 and [Federal Rule of Civil Procedure] 65, plaintiff FTSS requests the Court to enter an *ex parte* order directing the United States Marshall [sic] to seize and impound certain materials which constitute critical evidence in this litigation, yet are likely to be destroyed or concealed by defendants if an *ex parte* seizure order is not entered.

J.A. 95.

Within its complaint, brief, and affidavits supporting its motion, plaintiff presented the following information to the district court. Until December 1990, plaintiff was the sole designer and manufacturer of anthropomorphic test devices, more commonly known as crash test dummies. Plaintiff owned various inventions, trademarks, trade secrets, and copyrights on the vehicle crash test dummies and their related calibration software programs, manufacturing processes, component parts, customer lists, contacts, pricing information, and marketing strategy. On December 19, 1990, defendants Stephen Fuhr and Barry Wade, employees of plaintiff, formed defendant Vector Research, Inc. to compete with plaintiff in the design and manufacture of crash test dummies and related calibration software. The day before Vector's incorporation, Fuhr terminated his employment with plaintiff, but Wade continued to be employed as plaintiff's senior project engineer until January 4, 1991. Defendant Paul Depinet continued to be employed as plaintiff's data acquisitions supervisor until March 8, 1991. Plaintiff alleged that Fuhr, Wade, and Depinet violated their fiduciary duty as employees of plaintiff by using plaintiff's trade secrets, proprietary information, and copyrighted materials to build Vector's business.

Plaintiff submitted employee proprietary agreements which were signed by the individual defendants during their employment with FTSS.[1] These agreements address the trade secrets and proprietary information that an employee is prohibited from disclosing except for the benefit of FTSS. In addition, the agreements prohibited those individuals who had signed them from disclosing such information directly or indirectly after termination of employment with plaintiff and required return of any confidential information to FTSS.

Plaintiff alleged that computer media from one of its predecessors included information on costing, history of customers, customer information including the identity of customers, customer contracts, and other secrets related to the marketing of crash test dummies. This information had been transferred to a backup computer media that had been in the actual custody of Fuhr while he worked for plaintiff, but at the time plaintiff filed the complaint, this computer media could not be located. Shortly after Vector was formed, it allegedly contacted potential customers whose identity defendants could have only procured via the customer lists accessible to the former FTSS employees. The vice-president of finance for FTSS averred that a quotation submitted to a potential customer

---

1. Plaintiff asserted that defendant Wade also signed the proprietary information agreement, but the exhibit attached to the complaint is the signature page of Wade's acknowledgment and agreement to the contents of plaintiff's employee handbook.

was turned down as plaintiff was informed that the order for calibration equipment was awarded to Vector Research.

Eleven days after Vector's incorporation, defendants produced a price list for crash test dummies, calibration equipment, component replacement parts, and data acquisition software effective January 1, 1991.[2] The affidavit of George Pitarra, the former president and CEO of plaintiff, stated that it was "extremely unlikely" that a start-up company could develop and implement computer software for the calibration of crash test dummies in less than one year or could develop and market the full line of crash test dummy equipment described in Vector's price list in less than two years. Plaintiff alleged that information regarding the calibration of the crash test dummies, as well as the software involved, was a trade secret and was prohibited from distribution by former employees as evidenced by the employee proprietary information agreements.

In November 1991, plaintiff's president attended an international auto safety exhibition in Paris, France, where defendant Endevco gmbh[3] sponsored a stand and was representing Vector Research crash test dummies for sale. At the show, a crash test dummy manufactured by plaintiff was displayed in Vector's exhibit. Later that same month, both the president and the FTSS chairman attended a similar exhibit in Birmingham, England, and again encountered an FTSS crash test dummy displayed under Vector's advertising poster. The Endevco representative manning the stand acknowledged that the crash test dummy was indeed manufactured by plaintiff but stated it would not be removed from the stand.

In its brief supporting the ex parte motion, plaintiff argued that immediate relief was necessary.

> The evidence of the defendants' misconduct is now in the defendants' possession. For example, the dummy calibration software which is now being sold by defendants as *their* product is not in plaintiff's possession. That software can be identified by the source code and other identifying factors and compared to plaintiff's copyrighted software. Similarly, the plaintiff's engineering drawings, Bills of Materials, patterns and processes, and customer lists can be readily identified as the plaintiff's property. However, it is current business practice to store many business records electronically on computer tapes, floppy disks and hard disks. Not only is information stored in this manner easier to use than printed materials, it also is easier to destroy. Stated quite simply, if the incriminating evidence which proves the plaintiff's allegations still exists, it can now be seized and impounded but, given the character of the defendants' activities, it is very unlikely that such evidence would ever be produced through normal discovery if *ex parte* impoundment is not ordered.

> Plaintiff *does not seek* the impoundment of the defendants' own dummies, or component parts, or business records. The plaintiff does *not* ask the Court to seize the defendants' inventory and thus stop defendants from continuing to manufacture and sell their product. All the plaintiff seeks is the impoundment of *evidentiary* materials relevant to the allegation that the defendants built their business using plaintiff's property. Impoundment and destruction of the defendants' computer software and any other infringing material can await a full hearing on the merits, but the critical *evidence* of defendants' wrongdoing must be seized now.

J.A. 99–100. Plaintiff represented to the district court that the requested ex parte order of seizure and impoundment was authorized

---

2. However, the letter attached to Vector's price list stated, "[a]s you are well aware, this is a complex industry and we ask that you bear with us as we bring our facility and products on-line. Not all items listed are immediately available for shipment. We will be sending you more specific information on product availability as we reach full production capacity." J.A. 37.

3. As of November 24, 1992, defendants Endevco Corp., Endevco–U.K. Ltd., Endevco–France, and Endevco gmbh were dismissed as defendants after stipulating to a permanent injunction.

by law under 17 U.S.C. § 503 and Federal Rule of Civil Procedure 65.

After considering the materials presented by plaintiff, the district court granted the ex parte order of inventory and impoundment and an order to seal the record. The seizure order, which was drafted by plaintiff's counsel, permitted the United States Marshal along with representatives of the plaintiff to inventory and impound certain materials from the business facilities of Vector. The order also provided that plaintiff and its attorneys be allowed to inspect, copy, and photograph all such seized materials.

The order authorized the marshal to impound a variety of items that could be identified as belonging to plaintiff or its predecessors in interest, such as blueprints, computer printouts, computer programs, and documents bearing the name of plaintiff or its predecessor. The order further authorized the copying and inventory of all invoices and purchase orders for parts, customer lists, or other customer information materials held by the defendant, and all correspondence between defendant Vector Research and the plaintiff or the Endevco defendants. The impounded and copied materials were to be retained by the marshal or plaintiff's counsel in trust for the court. The order also required that the plaintiff deposit a cash or surety bond in the amount of $2,000.

On April 8, 1992, at approximately 5:00 p.m., two U.S. Marshals, accompanied by plaintiff's counsel, two FTSS employees, an attorney for plaintiff's local counsel's law firm, two other employees of the law firm, and a computer consultant, accessed Vector's facility to carry out the court's order. Approximately one hour later and after copying machines were set up, the marshals left the premises, leaving the rest of the search party unattended.[4] All parties left the premises at approximately 11:00 p.m. The seized materials[5] were held in trust for the court by plaintiff's local counsel's law firm because the marshals had no space to hold these materials. All individuals involved in the search of the Vector facility signed confidentiality agreements relating to the information viewed. On April 16, 1992, defendant filed a motion to vacate the order of impoundment and inventory and to request an immediate hearing. That same day, the district court held a pretrial conference in response to the hearing request. All counsel were present in chambers. At this conference, the court entertained arguments from defendants' counsel on the motion to vacate and addressed defendants' concerns regarding the execution of the ex parte order. At that time, the materials were transferred to the custody of a United States Magistrate Judge, where they remain today.

On December 18, 1992, after the parties had filed several briefs on the matter, the district court entered a memorandum and order denying defendants' motion to vacate the order granting plaintiff's request for immediate ex parte order of inventory and impoundment. The district court held that "under the Supreme Court Rules of Practice, the ex parte seizure order was not improper," and, in addition, "under Rule 65(d), the order was proper as plaintiff demonstrated the necessity to prevent immediate and irreparable injury." J.A. 88. This timely appeal followed.

On March 1, 1993, plaintiff filed in this court a motion to dismiss for lack of subject matter jurisdiction, arguing that 28 U.S.C. § 1292(a) did not vest jurisdiction because no activity was enjoined and that the matter was best left until discovery of the impounded documents was initiated and a final decision was reached on the merits. On May 12, 1993, after defendants had filed a brief in opposition and plaintiff had replied, a panel

---

**4.** Defendants contend that the marshals did not return. The affidavits of the two FTSS employees who carried out the order state that "[t]he U.S. Marshals left the building between 6 p.m. and 9 p.m." J.A. 177 & 180.

**5.** It is unclear what was actually seized. Plaintiff contends that no original documents or software were taken but rather only copies were made.

Defendants contend that original computer disks were seized. Plaintiff responds that several computer disks were removed from the Vector facility at the behest of one of the defendants because copying would be a lengthy process and that those disks were immediately returned to Vector after they had been duplicated.

of this court denied the motion to dismiss the appeal.

## II.

■ We review the district court's denial of defendants' motion to vacate the ex parte order of inventory and impoundment under an abuse of discretion standard. We review the granting or denial of a preliminary injunction for an abuse of discretion, *e.g., Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir.1988), and the same standard of review is appropriate here because the denial of defendants' motion to vacate the ex parte seizure order had the effect of a preliminary injunction. An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *See, e.g., Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir.1988).

The district court justified the ex parte seizure order as a proper exercise of its authority under the Copyright Act, 17 U.S.C. § 503(a),[6] which authorizes the court to order the impounding of all copies infringing the plaintiff's copyright along with any means for reproducing these infringing copies, and also under Fed.R.Civ.P. 65. The Copyright Act does not provide a standard for the district court's decision to grant an order of impoundment; rather, § 503 leaves this decision to the discretion of the district court by providing that "[a]t any time while an action under this title is pending, the court *may* order the impounding, on such terms as it may deem reasonable." 17 U.S.C. § 503(a) (emphasis added). The Copyright Rules following 17 U.S.C. § 501 purport to establish a procedure for ex parte seizure and impoundment of the articles subject to impoundment under § 503(a).[7]

6. At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced. 17 U.S.C. § 503(a).

7. Rule 3. Upon the institution of any action ... the plaintiff ... may file with the clerk ... an affidavit stating upon the best of his knowledge, information and belief, the number and location, as near as may be, of the alleged infringing copies, records, plates, molds, matrices, etc., or other means for making the copies alleged to infringe the copyright, and the value of the same, and with such affidavit shall file with the clerk a bond executed by at least two sureties and approved by the court....

Rule 4. Such bond shall bind the sureties in a specified sum, to be fixed by the court, but not less than twice the reasonable value of such infringing copies, plates, records, molds, matrices, or other means for making such infringing copies, and be conditioned for the prompt prosecution of the action, suit or proceeding; for the return of said articles to the defendant, if they or any of them are adjudged not to be infringements, or if the action abates, or is discontinued before they are returned to the defendant; and for the payment to the defendant of any damages which the court may award to him against the plaintiff or complainant. Upon the filing of said affidavit and bond, and the approval of said bond, the clerk shall issue a writ directed to the marshal ... directing the said marshal to forthwith seize and hold the same subject to the order of the court....

Rule 5. The marshal shall thereupon seize said articles ... using such force as may be reasonably necessary in the premises, and serve on the defendant a copy of the affidavit, writ, and bond by delivering the same to him personally ... and shall make immediate return of such seizure, or attempted seizure, to the court....

Rule 6. A marshal who has seized alleged infringing articles, shall retain them in his possession, keeping them in a secure place, subject to the order of the court.

Rule 7. Within three days after the articles are seized, and a copy of the affidavit, writ and bond are served as hereinbefore provided, the defendant shall serve upon the clerk a notice that he excepts to the amount of the penalty of the bond, or to the sureties of the plaintiff ..., otherwise he shall be deemed to have waived all objection to the amount of the penalty of the bond and the sufficiency of the sureties thereon. If the court sustain[s] the exceptions it may order a new bond to be executed by the plaintiff or complainant, or in default thereof within a time to be named by the court, the property to be returned to the defendant.

Rule 9. The defendant, if he does not except to the amount of the penalty of the bond or the sufficiency of the sureties of the plaintiff or complainant, may make application to the court for the return to him of the articles seized, upon filing an affidavit stating all material facts and circumstances tending to show that the articles seized are not infringing copies, records, plates, molds, matrices, or means for making the copies alleged to infringe the copyright.

Defendants argue that plaintiff did not comply with the Copyright Rules, and even if the Copyright Rules were complied with, the ex parte seizure order was still not justified. Defendants' objections to the district court's holding that the Copyright Rules had been complied with are meritless, but defendants' argument that the ex parte order was nevertheless unauthorized by law is correct.

The district court addressed defendants' objections and held that there was general compliance with the Copyright Rules. Defendants' first objection is that the affidavits filed by FTSS in support of its ex parte motion did not state to anyone's best "knowledge, information and belief, the number and location" of the alleged infringing copies or the value of these copies as required by Rule 3. The district court properly rejected this argument because the complaint identified the location of defendants' principal place of business, the order of seizure was directed to that location, and that was the sole location searched.

Second, defendants argue that plaintiff's bond was not equal to twice the reasonable value of the allegedly infringing articles that were to be seized as required by Rule 4. The court set the bond at $2,000. However, defendants submitted the affidavit of Steven Fuhr, which stated that the value of the articles seized and copied exceeded $2.2 million. Fuhr seems to base his estimate on the value of the information contained in the business records that plaintiffs were permitted to copy. Because, as discussed below, these Copyright Rules are only relevant to the seizure of the infringing goods, the value of the information contained in the seized business records is irrelevant in setting the bond amount. Therefore, the district court's finding that $2,000 was sufficient bond was not clearly erroneous.

Third, defendants complain that instead of the clerk's issuing a writ, as provided in Rule 4, there was only the ex parte order of the district court. However, by issuing the order, the district court avoided a possible due process problem. *See Paramount Pictures Corp. v. Doe 1*, 821 F.Supp. 82, 87–88 (E.D.N.Y.1993). Therefore, the district court did not abuse its discretion by issuing a seizure order instead of allowing the clerk to issue a writ of seizure.

Fourth, defendants contend that they were not served with a copy of the bond at the time of the seizure, as required by Rule 5. In its order denying defendants' motion, the district court stated that it could not determine whether a copy of the bond was actually served at the time of the seizure and, accordingly, ordered plaintiff to submit a copy of the bond to defendants. Therefore, the district court corrected any problem that may have been caused in this respect.

Finally, defendants charge impropriety because the Marshal's office did not retain the seized articles but rather they were kept by plaintiff's local counsel for nine days before being transferred to the magistrate judge. However, Rule 6 provides that the Marshal should retain the seized articles "subject to the order of the court." The ex parte seizure order specifically authorized the law firm to hold the seized materials in trust for the court because the marshals had insufficient space to hold the materials. Undoubtedly, the better practice would be to require the U.S. Marshal to retain the impounded items. However, in the circumstances of this case, we cannot say that the district court abused its discretion by allowing the law firm to hold the items in trust for the court. Thus, the district court did not abuse its discretion by holding that the Copyright Rules were complied with in this case.[8]

---

8. However, whether compliance with the Copyright Rules is a sufficient basis on which to justify an ex parte order of impoundment under 17 U.S.C. § 503 is a matter of some debate. Some courts have held that compliance with the Copyright Rules is constitutionally insufficient and require that the plaintiff meet the burdens imposed by Federal Rule of Civil Procedure 65(b) for the granting of ex parte injunctive relief. *Paramount Pictures Corp. v. Doe 1*, 821 F.Supp. 82, 85–87 (E.D.N.Y.1993); *WPOW, Inc. v. MRLJ Enters.*, 584 F.Supp. 132, 134–35 (D.D.C.1984); *see also American Can Co. v. Mansukhani*, 742 F.2d 314, 321–324 (7th Cir.1984) (holding that ex parte seizure order in trade secrets case was abuse of discretion because there was no valid reason for proceeding ex parte and not complying with the requirements of Fed.R.Civ.P. 65(b)); Paul S. Owens, *Impoundment Procedures Under the Copyright Act: The Constitutional Infirmities,*

■ However, the ex parte order issued by the district court was too broad to fall within the authorization of 17 U.S.C. § 503 and the Copyright Rules. The district court's order permitted the plaintiff to seize not only computer software that allegedly infringed plaintiff's copyrights but also to copy defendants' business records, including "[a]ll invoices and purchase orders for parts, customer lists or other customer-information materials held by the defendants, and all correspondence between the defendant Vector Research, Inc. and the plaintiff or the Endevco defendants." J.A. 119. In this connection, we note that the district court's memorandum and order denying defendants' motion fails to address the propriety of the seizure of business records despite defendants' focus on this aspect of the ex parte order.

The parts of the district court's order allowing plaintiff to seize defendants' business records were not authorized by 17 U.S.C. § 503(a).[9] The language of § 503(a) only authorizes the impoundment of goods that infringe plaintiff's copyrights and articles that can be used to copy those infringing goods.[10] Furthermore, the Copyright Rules make it a ground for return of seized articles that those articles are neither infringing copies nor the means of producing infringing copies. See Copyright Rules 4 and 9. The business records that the district court ordered to be seized in this case were not alleged to have infringed plaintiff's copyrights and were not means by which infringing goods could be copied. The business records were no more than possible evidence of the alleged infringement. Moreover, § 503 was not meant to give the copyright holder a means to preserve evidence generally. It is well established that "[t]he primary purpose of impoundment is to maintain the feasibility of the eventual destruction of items found at trial to violate the copyrights laws by safeguarding them during the pendency of the action." *Midway Mfg. Co. v. Omni Video Games, Inc.*, 668 F.2d 70, 72 (1st Cir.1981) (citing *Jewelers' Circular Publishing Co. v. Keystone Publishing Co.*, 274 F. 932, 936 (S.D.N.Y.1921) (L. Hand, J.), *aff'd*, 281 F. 83 (2d Cir.), *cert. denied*, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922)). The seizure of these business records was only for the purpose of preserving evidence of defendants' allegedly wrongful conduct. Because business records, such as those ordered to be seized in this case, are not the type of items that are subject to impoundment under 17 U.S.C. § 503(a), the district court's order permitting plaintiff to seize defendants' business records was not authorized by § 503. See *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir.1989).

■ Because the district court's order was not authorized by 17 U.S.C. § 503, the Copyright Rules do not provide the proper procedure. In the absence of specific rules, such as the Copyright Rules, the district court must proceed under the general rules

14 Hofstra L.Rev. 211 (1985) (suggesting that use of Fed.R.Civ.P. 65 would cure the "constitutional infirmities" of impoundment procedure prescribed by the Rules of Practice). The Second Circuit, however, has noted that the Copyright Rules have never been explicitly repealed by the Supreme Court or Congress. *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1124 (2d Cir.1989); *see also Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972); *Jondora Music Publishing Co. v. Melody Recordings, Inc.*, 362 F.Supp. 494 (D.N.J.1973), *vacated*, 506 F.2d 392 (1974), *cert. denied*, 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975).

**9.** Plaintiff cites *PRC Realty Systems v. National Ass'n of Realtors*, 766 F.Supp. 453 (E.D.Va. 1991), *aff'd in part, rev'd in part*, 972 F.2d 341 (4th Cir.1992), for the proposition that "[t]he items which may be impounded [under § 503(a)] include any that are relevant to copyright protection." Brief of Appellee 19. However, review of that case fails to reveal any discussion regarding the scope of permissible impoundment under § 503.

**10.** Compare the Trademark Counterfeiting Act of 1984, which provides that in

> [c]ivil actions arising out of use of counterfeit marks … the court may, upon ex parte application, grant an order … providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, *and records documenting the manufacture, sale, or receipt of things involved in such violation.*

15 U.S.C. § 1116(d)(1)(A) (emphasis added). The Copyright Act, on the other hand, provides no such express authorization to seize records.

governing injunctive relief. *Id.* at 1124; *see also* Fed.R.Civ.P. 1 and Copyright Rule 1. Federal Rule of Civil Procedure 65 provides the procedure that the district court must follow when granting injunctive relief. The only type of injunctive relief that a district court may issue ex parte is a temporary restraining order. Fed.R.Civ.P. 65(b). However,

> [a] temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

*Id.* "[T]he Rule 65(b) restrictions 'on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" *Reed v. Cleveland Bd. of Educ.,* 581 F.2d 570, 573 (6th Cir.1978) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974)). Furthermore, ex parte restraining orders should be limited to preserving the status quo only for so long as is necessary to hold a hearing. *Granny Goose,* 415 U.S. at 439, 94 S.Ct. at 1124.

The parties disagree as to whether the seizure order only preserved the status quo. Plaintiff argues that the order did no more than was necessary to preserve the status quo by taking "an unaltered snapshot of [defendants'] operation at a particular point in time." Brief of Appellee 27. Plaintiff notes that the documents authorized for impoundment were all relevant to the merits of the case and were only copied, not taken from defendants, so that defendants' operation would not be affected. Defendants, on the other hand, argue that this order went be-

yond preserving the status quo. Defendants cite *Warner Bros. Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1125 (2d Cir.1989), which stated: "An order issued without notice directing an agent of plaintiff's attorney to search a defendant's premises, seize goods, documents and records and deliver them to the attorney, is not an order aimed at maintaining the status quo."

 Regardless of whether the district court's order in this case merely preserved the status quo, plaintiff was required by Fed.R.Civ.P. 65(b) to show that the circumstances were appropriate for ex parte relief. The normal circumstance for which the district court would be justified in proceeding ex parte is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found. *American Can Co. v. Mansukhani,* 742 F.2d 314, 322 (7th Cir. 1984). Plaintiff does not argue that this justification is present in this case. There is, however, another limited circumstance for which the district court may proceed ex parte: where notice to the defendant would render fruitless further prosecution of the action. *See id.; In re Vuitton et Fils S.A.,* 606 F.2d 1 (2d Cir.1979); *Paramount Pictures Corp. v. Doe 1,* 821 F.Supp. 82, 89 (E.D.N.Y.1993).

 In order to justify proceeding ex parte because notice would render further action fruitless, the applicant must do more than assert that the adverse party would dispose of evidence if given notice. "Where there are no practical obstacles to giving notice to the adverse party, an ex parte order is justified only if there is no less drastic means for protecting the plaintiff's interests." *American Can,* 742 F.2d at 323. In this case, the district court could have ordered the defendants not to disturb any of the items listed in the seizure order and held an immediate adversarial hearing to determine whether the seizure order should issue. Therefore, plaintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing.

█ The applicant must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history. For example, in *In re Vuitton*, a famous manufacturer of expensive luggage explained its need for an ex parte restraining order by pointing to its experience in several previous actions it had filed against similar counterfeiters selling luggage unlawfully infringing the manufacturer's trademark. The manufacturer explained that in those previous actions its efforts were foiled because the counterfeiters, after receiving notice of the pending action, simply transferred their inventories to other members of a closely-knit group of counterfeiters. The Second Circuit held that the district court abused its discretion by not issuing the ex parte order because the manufacturer had made a sufficient showing of why notice should not be given to the defendants. *In re Vuitton*, 606 F.2d at 4–5.

However, *American Can*, 742 F.2d at 322–25, a case from the Seventh Circuit, demonstrates the limits of this circumstance. In that trade secrets case, the district court issued an ex parte order permitting the plaintiff, accompanied by U.S. Marshals, to enter defendant's business premises and seize samples of the allegedly infringing inks and to copy all documents relating to defendants' sale of jet inks, defendants' production documents, and defendants' correspondence with plaintiff's customers. *Id.* at 318. On appeal from the ensuing preliminary injunction, the Seventh Circuit held that issuing the seizure order ex parte was an abuse of discretion because there was no valid reason for proceeding ex parte and not complying with Fed.R.Civ.P. 65(b). Plaintiff had supported its argument that notice would have rendered fruitless the further prosecution of the action by asserting that the defendants, after receiving notice, "would have immediately caused [defendants] to alter the inks in their factory and secrete the pertinent documents." *Id.* at 322. The court noted that it "agree[d] with the Second Circuit that ex parte orders of very limited scope and brief duration may be justified in order to preserve evidence where the applicant shows that notice would result in destruction of

evidence" but held that plaintiff's unsupported assertions that defendants would destroy evidence were insufficient to show the need for proceeding ex parte. *Id.* at 323.

In the present case, the only justification given to the district court for proceeding ex parte was that

it is current business practice to store many business records electronically on computer tapes, floppy disks and hard disks. Not only is information stored in this manner easier to use than printed materials, it also is easier to destroy. Stated quite simply, if the incriminating evidence which proves the plaintiff's allegations still exists, it can now be seized and impounded but, given the character of the defendants' activities, it is very unlikely that such evidence would ever be produced through normal discovery if *ex parte* impoundment is not ordered.

Brief in Support of Emergency Motion for Ex Parte Order of Seizure and Impoundment of Evidence, J.A. 99–100.

█ Showing that the adverse party would have the opportunity to conceal evidence is insufficient to justify proceeding ex parte. If it were, courts would be bombarded with such requests in every action filed. The applicant must show that the adverse party is likely to take the opportunity for such deceptive conduct. Plaintiff contends that "the character of defendants' activities" shows that defendants were likely to conceal evidence. Plaintiff was seemingly referring to defendants' having allegedly unlawfully usurped plaintiff's business opportunities and allegedly violating their confidentiality agreements with plaintiff. These allegations are insufficient. Plaintiff did not show that defendants, or persons involved in similar activities, had ever concealed evidence or disregarded court orders in the past.

In this appeal, plaintiff argues that defendants have very recently displayed their propensity to conceal evidence. Plaintiff contends that

[d]espite a formal discovery request for all loans to Vector, Defendants–Appellants concealed from the production of documents evidence that a supplier to FTSS

which has access to confidential FTSS product specifications invested heavily in Defendants' business three months after it was formed. This information was only revealed after documents had been subpoenaed from a third party.

Brief of Appellee 25–26. This contention is irrelevant to a determination of whether plaintiff made a sufficient showing to the district court before the district court proceeded ex parte to order the copying of defendants' business records because this alleged concealment took place after the ex parte order had been issued. Furthermore, it would be inappropriate for this court to consider plaintiff's contention because there has been no determination as to its accuracy. Therefore, plaintiff failed to make an adequate showing to the district court that notice to defendants would have rendered fruitless the further prosecution of the action.

 Thus, the district court abused its discretion in issuing the ex parte order of inventory and impoundment. The court was required to apply the standard provided in Fed.R.Civ.P. 65(b) for granting ex parte relief, because neither 17 U.S.C. § 503(a) nor the Copyright Rules authorizes the copying of business records, which the district court's order permitted. Plaintiff did not make a sufficient showing of at least one prerequisite for obtaining an ex parte order under Fed. R.Civ.P. 65(b); namely, why notice should not have been required. Plaintiff did not sufficiently show that it was necessary to proceed ex parte and that there were no less extreme remedies available. Plaintiff's assertion that defendants would conceal evidence if given notice because defendants allegedly misappropriated trade secrets and infringed plaintiff's copyrights is insufficient to establish that notice to the defendants would have rendered fruitless further prosecution of the action. Because plaintiff failed to comply with Fed.R.Civ.P. 65(b), the district court's ex parte order of inventory and impoundment was an abuse of discretion. Therefore, the district court's order denying

defendants' motion to vacate that ex parte order was, likewise, an abuse of discretion.[11]

## III.

For the reasons stated, the district court's order denying defendants' motion to vacate the order granting plaintiff's request for immediate ex parte order of inventory and impoundment is REVERSED, and this case is REMANDED for further action consistent with this opinion. The district court is ORDERED to immediately return to defendants all items taken from defendants pursuant to the ex parte order of inventory and impoundment, including all photocopies and electronic copies made, but the district court may condition the return of these items by such safeguards as it deems necessary to prevent the secretion, alteration, or destruction of the returned items.

**11.** Having concluded that the ex parte order was an abuse of discretion, we need not address

defendant's Fourth Amendment argument.