**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0202n.06

No. 11-2646

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Neil Spizizen, Individually; Neil Spizizen Revocable Living Trust, U/A/D 7/3/86; Crescendo Homes, Inc., a Michigan Corporation, | ) ) ) ) | |
| | ) | |
|       Plaintiffs-Appellants<br>      Counter-Defendants | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| National City Corporation, a foreign profit corporation; PNC Financial Services Group, Inc., dba National City Bank, a foreign profit corporation; Stanley P. Szasna, an individual; Hope Landgraff, an individual; Richard Landgraff, an individual; Norman Lining, an individual | ) ) ) ) ) ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
|       Defendants-Appellees | ) | |
| | ) ) | |
| PNC Bank, N.A., fka National City Bank, | ) | |
| | ) | |
|       Counter-Plaintiff<br>      Appellee. | ) ) | |

BEFORE:     BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit Judges.

    **MERRITT, Circuit Judge.** This diversity case involves a real estate developer, a series of loans, and a bank's right to set-off a debt against unpaid loans. The plaintiffs-appellants erroneously assert a long series of errors by the district court. We affirm the judgment below.

## I. Facts

The district court in this case appropriately detailed all of the facts in this case. *See Spizizen v. Nat'l City Corp.*, 2011 WL 1429226 (E.D. Mich. Apr. 14, 2011). Thus, we will only provide a brief summary of facts relevant to our analysis. Neil Spizizen and National City Bank ("Bank") have a long-standing relationship stemming from loan transactions used to purchase and develop Michigan properties. Spizizen alleges that the Bank seized $3.1 million from his accounts without the authority to do so. The Bank argues that after Spizizen did not pay on his obligations when due and did not comply with the language of the loan documents and security agreements, it appropriately set-off the debt with money from Spizizen's accounts.

Spizizen then filed this suit in state court against the Bank and several of its employees. He claimed conversion, breach of contract, and breach of the covenant of good faith and fair dealing. The Bank successfully removed the case to federal court, citing diversity of citizenship and claiming fraudulent joinder of the non-diverse employees. The district court found that Spizizen's conversion claim was not a colorable state-law cause of action, and thus, denied his motion to remand. The Bank filed a counterclaim, alleging five counts of breach of contract for failure to make payments on five loan obligations and one count seeking declaratory relief that the Bank had a right to hold and foreclose on Spizizen's trust account assets.

Each party moved for summary judgment. The district court denied Spizizen's motion for summary judgment and granted the Bank's motion. In turn, the court entered an order in favor of the Bank, awarded the Bank attorney fees, and denied Spizizen's request for pre- and post-judgment

interest. In addition, during discovery, the district court granted Spizizen's motion to compel certain documents, but declined to levy sanctions on the Bank.

Spizizen timely appealed, contesting the refusal to remand to state court, the grant of summary judgment on the breach of contract claims, the decision not to levy sanctions, the grant of attorney fees, and the denial of pre- and post-judgment interest.

## II. Analysis

### A. The Conversion and Fraudulent Joinder Issue

After removing the case to federal court, the Bank claimed fraudulent joinder by plaintiffs of the non-diverse employees because it argued that Spizizen's conversion claim was not a colorable cause of action under Michigan law. Spizizen had alleged that the Bank employees, acting under the direction of the Bank, converted money from his account, entitling him to a remedy in tort. It's noteworthy that Spizizen did not allege that the employees pocketed the money for their own personal gain or that they were acting outside of the scope of their employment. Spizizen maintains that the employees, performing the orders of their superiors to set-off the account, converted his money. The district court, finding that there was no colorable claim for conversion, refused to remand the case to state court.

Where federal jurisdiction is based on diversity, diversity must be complete. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978). A removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined. *Jerome-Duncan, Inc. v. Auto-By-Tel., LLC*, 176 F.3d 904, 907 (6th Cir. 1999). To prove fraudulent joinder, the removing defendant must show that the plaintiff did not have a colorable cause of action against the defendant in state

court. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492-93 (6th Cir. 1999). Under Michigan law, a breach of a contractual obligation cannot support an action in tort absent the "violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997). The relationship between a bank and its depositor is one of a debtor-creditor. *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989). Accordingly, a claim of conversion is only sustainable if the defendant bank obtained the money without the owner's consent to the creation of that debtor-creditor relationship. *Comerica Bank v. Allied Commc'ns, Inc.*, 1997 WL 33353282, at *2 (Mich. Ct. App. Mar. 14, 1997) (holding that a defendant bank could not be held liable for a claim of conversion arising from its allegedly improper set-off of funds from the customer's bank account to pay down a debt owed to the bank where the customer had consented to the creation of a debtor-creditor relationship by depositing money with the bank).

Here, Spizizen clearly consented to the creation of a debtor-creditor relationship with the Bank when he deposited money into his checking account. He also plainly created a contractual relationship with the Bank through a security agreement when he set up a trust account. Pls. Mot. for Summ. J. Ex. 13, July 30, 2010, ECF No. 36. The agreement, in fact, stipulated that the assets in the trust account could be used for any amount owed to the Bank. If Spizizen believed that the Bank violated this express agreement or violated its duty to hold funds in trust, a breach-of-contract claim would be the appropriate remedy. A claim for conversion is not the appropriate cause of action because it does not state a "violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr. Corp.*, 559 N.W.2d at 658. The fact that a trust account may have

-4-

specific or special funds does not alter the nature of the relationship—the security document is still the controlling contract. Thus, the district court appropriately held that there was no colorable state-law claim of conversion against either the Bank or its employees for implementing a set-off under the contract. The case appropriately remained in federal court and the denial of a remand was proper.

## B. Summary Judgment on Breach of Contract Claims

On cross motions for summary judgment, the district court determined that there was no genuine issue of material fact as to the Bank's right to hold Spizizen's collateral in excess of his debts and to set-off the account. It concluded that Spizizen had breached the contracts on his loans by defaulting. We agree.

Spizizen once again chooses to ignore the plain language of the loan and security documents. The trust account security agreement states that the security interest extends to "any and all replacements and substitutions therefor and . . . all cash and noncash proceeds of all or any part of the property hereinbefore described." Pls. Mot. For Summ. J. Ex. 13. The language of the agreement grants a specific security interest in these account assets without any reference to the value of the assets. *Id.* The agreement also provides that the Bank "shall have the right to sell or otherwise dispose of the Collateral or any part thereof or any interest therein at any time or from time to time." Pls. Mot. For Summ. J. Ex. 17. Furthermore, the Bank is only required to return any unsold [Armada] shares or surplus from the sale of shares to Spizizen "[u]pon the payment in full and satisfaction . . ." of debt. *Id.* The business account agreement granted the Bank the right "to refuse further deposits or withdrawals . . . decline to process any transaction, terminate electronic access

to the Account . . . with or without cause and without prior notice." Defs.' Mot. For Summ. J. Ex. 19, July 30, 2010, ECF No. 37. The deposit account agreement provides that the Bank has the right to a set-off "whether such deposits are general or special" and the Crescendo Note, the specific note in question, states that it may be enforced on demand. *Id.*

We recite in detail the language of the loan documents to show that Spizizen needed only to look to this express language to understand that the Bank had a right to set-off and make the note payable on demand if Spizizen fell behind on his obligations. When Spizizen failed to pay the Private Portfolio Note in full, the Bank had the right to take possession of the secured assets in the trust account. The district court, in its well-reasoned opinion, explained that the Bank had a right to convert the shares in the trust account into cash to satisfy the debt and that the Bank had a right to take possession of the secured assets in the trust account under Michigan's adoption of the UCC. *Spizizen*, 2011 WL 1429226 at *4. The UCC also grants the Bank the right to apply cash proceeds from the sale of the collateral. Mich. Comp. Laws. § § 440.9607(1), .9610(1). As the district court noted, "Plaintiffs fail to draw the Court's attention to any language in the agreement, the UCC, or any other authority which states that the value of collateral administratively held or seized by a creditor cannot exceed the value of debt. Therefore, Defendants' right to seize the collateral is not affected in any way by the value of the collateral." *Spizizen*, 2011 WL 1429226 at *4.

We hold that the grant of summary judgment was proper because these unambiguous contract provisions make clear that the Bank had the right to hold the assets regardless of the value of the shares, had a right to apply the proceeds of the shares to Spizizen's debt, and had a right to set-off the general checking account.

Furthermore, Spizizen does not dispute that he was in default on all of his loan obligations. He only alleges that the grant of summary judgment as to the Bank's breach-of- contract claims is improper because the Bank materially breached the contract first by offsetting the assets in the trust account. As explained above, we do not find that the Bank materially breached the contract. In fact, it adhered to the contract. The language provided that the Bank had an unrestricted right to offset against both general and specific accounts without regard to ownership and that the note was payable on demand. Thus, the district court appropriately granted the Bank summary judgment on its breach-of-contract claims.[1]

## C. Sanctions

This Court reviews a district court's denial of a motion for discovery sanctions for an abuse of discretion. *Turner v. Romanowski*, 409 F. App'x. 922, 925-26 (6th Cir. 2011). We have said that an abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

During discovery, the district court granted Spizizen's motion to compel, but declined to levy any sanctions against the Bank. Spizizen contends that Rule 37 of the Federal Rules of Civil

---

[1] We need not discuss Spizizen's additional claim that the amount awarded for the breach-of-contract claims should be reduced because the parties had settled on a lesser amount for the Oakland Pointe Note. As the district court noted, although settlement talks may have been underway, the parties had not come to a "meeting of the minds" on a final settlement, and thus, a contract had not been formed at the time of the granting of summary judgment. *See Spizizen*, 2011 WL 6434670, * 3 (E.D. Mich. Dec. 16, 2011). Thus, the district court's judgment amount for the breach-of-contract claims was appropriate.

Procedure mandates an award of sanctions. Under Rule 37, however, the judge retains discretion in awarding sanctions, and it does not automatically require the awarding of sanctions when granting a motion to compel if there are "circumstances [that] make an award of expenses unjust," or if the nondisclosure was "substantially justified," or if there was no attempt to obtain the discovery in good faith before court action. Fed. R. Civ. P. 37. There is nothing in the record that provides a compelling reason why these exceptions are inapplicable or why the district court should have felt compelled to levy sanctions in this case. Thus, we hold that the district court did not abuse its discretion in refusing to levy sanctions on the Bank.

### D. Attorney Fees

An abuse-of-discretion standard also applies to the award and amount of attorney fees. *Geier v. Sundquist*, 372 F.3d 784, 789 (6th Cir. 2004). After a lengthy and detailed analysis, the district court awarded the Bank $139,876.65 in attorney fees. *Spizizen v. Nat'l City Corp.*, 2011 WL 6434670, at *6-8 (E.D. Mich. Dec. 16, 2011). Under our deferential standard of review, we find that the district court did not abuse its discretion. Since this issue does not warrant extensive discussion, we only address Spizizen's main contentions.

First, Spizizen unreasonably contends that the district court should not have awarded attorney fees in connection with already-settled claims. This contention is meritless because the district court specifically stated in its order that the defendants "cannot recover attorney fees for efforts expended on the two counterclaims that Defendants dismissed earlier" and accordingly deducted those fees when calculating the fee award. *Id*. at *8.

Next, Spizizen claims, again unreasonably, that the district court erred in awarding attorney fees where contractual language did not provide for such an award. Indeed, Michigan follows the American Rule, which dictates that attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract. *Reed v. Reed*, 693 N.W.2d 825, 845 (Mich. Ct. App. 2005). Further, indemnity provisions must express the parties' intent to include attorney fees. *Comerica Bank v. Alkhafaji*, 2007 WL 1855048, at *2 (Mich. Ct. App. June 28, 2007). Here, however, the express contractual language contemplates the awarding of attorney fees. The indemnity clause on both notes states that the borrower will reimburse the Bank "for any and all fees, costs and expenses (including, without limitation, the fees and disbursements of outside legal counsel and the interdepartmental charges and/or salary of in-house counsel) . . . ." (Pls. Mot. for Partial Summ. J. Ex. 7 at 3; Ex. 9 at 2). The language is not ambiguous, as Spizizen argues, but rather clear in its directive that the parties contemplated attorney fees in the drafting of this language. Nothing requires drafters to use the magic words "attorney fees" as long as the intention is straightforward and clear. Spizizen provides no logical explanation why fees for "legal counsel" is different from "attorney fees."

Next, Spizizen contests the reasonableness of the fees. Here, the district court appropriately looked to the proceedings of this case and calculated a figure in the range of applicable fees in the Michigan market using the lodestar method. We find that the district court did not abuse its discretion in fashioning such an award.

**E. Pre- and Post-Judgment Interest**

When the district court granted the Bank's motion for summary judgment and awarded its money judgment, it further ordered the Bank to satisfy the judgment by liquidating the assets in the trust account and to return any remaining surplus to Spizizen. Although the amount, if any, of the "surplus" is unknown, and neither party was able to articulate the exact amount at oral argument, Spizizen argues that he is entitled to pre- and post-judgment interest on that amount.

Federal law controls post-judgment interest for state-law claims and state law governs awards of prejudgment interest. *Estate of Riddle v. So. Farm Bur. Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005). 28 U.S.C. § 1961(a) requires district courts to award post-judgment interest on all money judgments. *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 901, 910 (6th Cir. 2002). The underlying purpose of § 1961 is "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990). Here, although Spizizen may be entitled to any remaining surplus, he is not a "successful plaintiff." The district court appropriately applied 28 U.S.C. § 1961 to the Bank's money judgment rather than to the surplus—a sum of money that the Bank never claimed it was entitled to at all.

Michigan law dictates the award of prejudgment interest. We review the awarding of prejudgment interest for an abuse of discretion. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 333 (6th Cir. 2007). A district court may award prejudgment interest "at its discretion in accordance with general equitable principles." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998).

By statute, Michigan permits the awarding of prejudgment interest on a money judgment recovered in a civil action. Mich. Comp. Laws. § 600.6013. Spizizen, although on the losing side of this case, regards the "surplus" as a money judgment. This novel interpretation of "money judgment" defies common sense because Spizizen received no judgment at all, but rather just the right to money that was already his in the first place. The mathematics of determining the surplus is like an accounting. As the district court observed, "Plaintiffs' recoupment is simply the inevitable consequence of the Court's judgment, rather than a judgment unto itself. As such, no money judgment in the Plaintiffs' favor exists, and no interest is warranted." *Spizizen,* 2011 WL 6434670 at *4. The district court did not abuse its discretion in not awarding Spizizen pre-judgment interest on the unspecified surplus amount.

### III. Conclusion

For the reasons set forth above, we affirm the judgment of the district court.