**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**POINTE PHYSICAL THERAPY, LLC., et al., Defendants.**

Case No. 14–11700

United States District Court, E.D. Michigan, Southern Division.

Signed June 12, 2017

Ross O. Silverman, Jared T. Heck, Jonathan L. Marks, Kathleen Ann Kelley, Kathy P. Josephson, Matthew R. Ryan, Katten Muchin Rosenman LLP, Chicago, IL, Matthew P. Allen, Thomas W. Cranmer, Miller, Canfield, Paddock and Stone, PLC, Jeffrey Alan Crapko, Troy, MI, for Plaintiff.

Elizabeth A. Downey, Elizabeth A. Downey, P.C., Larry W. Bennett, Seikaly & Stewart, P.C., Farmington Hills, MI, Michael S. Cafferty, Michael S. Cafferty & Assoc., Tiffany R. Ellis, Detroit, MI, Jack J. Mazzara, Matthew D. Smith, Mazzara Law Firm, PLLC, Grosse Pointe Woods, MI, Heather J. Atnip, Atnip & Associates, PLLC, Rochester, MI, Edward L. Ewald, Jr., Landis & Day, PLC, Wixom, MI, Robert L. Akouri, Dearborn, MI, for Defendants.

Andrew Ruden, West Bloomfield, MI, pro se.

## OPINION AND ORDER DENYING MOTION FOR PROTECTIVE ORDERS (Dkt. 180, 206) and MOTION TO QUASH SUBPOENA (Dkt. 183)

Stephanie Dawkins Davis, United States Magistrate Judge

### A. Facts and Procedural History

Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm") filed this action against the defendants, alleging common law fraud, racketeering in violation of federal RICO statutes and unjust enrichment. In addition to money damages, plaintiffs also seek declaratory relief against four of the defendants. (Dkt. 1, Pg ID 82–95). The crux of State Farm's theory is that the defendants participated in a scheme to defraud State Farm by causing the submission of fraudulent claims in relation to patients involved in automobile accidents. Amongst other things, State Farm alleges that the defendants submitted claims for treatment that was medically unnecessary, including but not limited to, unnecessary physical therapy and MRIs. Plaintiff further posits that part of the scheme involved two transportation companies, Get Well and Transport Us LLC ("Transport Us"), which were used to ensure that the patients appeared at the defendants' facilities. (Dkt. 190, Pg ID 6986). In order to obtain reimbursement for the transportation provided by Get Well and Transport Us, plaintiff avers that Prescribing Clinics and Prescribing Doctors issued disability certificates which falsely declared the patients were unable to drive. *Id.* In aggregate, an overwhelming majority of the patients for whom claims were submitted used Get Well or Transport Us; and the transportation fees charged by Get Well and Transport Us allegedly far exceeded the fees those same trips would have fetched using a taxi.

Based on discovery to date, State Farm contends that it has reason to believe that defendant, Amale Bazzi owns and/or controls Get Well, and therefore has been unfairly enriched from the payment of fraudulent transportation claims submitted in favor of Get Well. Plaintiff further divines from the testimony of some of Get Well's drivers and other evidence that Get Well and Transport Us may comprise a single entity.

Pursuant to an order of reference from District Judge Paul D. Borman, on Janu-

ary 10, 2017, the undersigned held a telephone conference regarding a joint statement the parties sent to Judge Borman on bank subpoenas issued by plaintiff, State Farm Mutual Automobile Insurance Company. (Dkt. 189). At that conference, the Court determined that while Judge Borman had already ordered that the bank subpoenas could be issued, additional briefing was required on the issue of proportionality as the parties had not fully briefed or addressed this issue previously. Subsequently, defendants filed a motion for protective order on January 24, 2017. (Dkt. 206). That motion was also referred to the undersigned. (Dkt. 207). Plaintiff filed a response on January 31, 2017. (Dkt. 208, 209). On February 3, 2017, defendants filed their reply. (Dkt. 210). The parties filed their joint statement on March 20, 2017. (Dkt. 217).

Relatedly, on November 3, 2016, non-party Get Well Medical Transportation Company filed a motion to quash a subpoena served by State Farm on its bank institution, Citizens Bank. (Dkt. 180). That motion was referred to this Court, is fully briefed, and the parties filed their joint statement. (Dkt. 181, 190, 216). In addition, on November 9, 2016, non-party Affiliated Diagnostic of Oakland, LLC filed a motion to quash the subpoena served by State Farm on its banking institution, Citizens Bank. (Dkt. 183). That motion was also referred, is fully briefed, and the parties have filed their joint statement. (Dkt. 185, 193, 223). On March 30, 2017, the Court held a hearing on all three motions and took the matters under advisement. For the reasons set forth below, the motions to quash are **DENIED**.

## B. Legal Standards

■ As an initial matter, the Federal Rules of Civil Procedure were written to facilitate the discovery of relevant evidence proportional to the needs of each case. Rule 26 authorizes relatively expansive discovery, subject to the considerations set forth in Rule 26(b)(1). Further, a court has broad discretion over discovery matters, *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999), and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and an order of the same is overruled only if the district court finds an abuse of discretion.[1] In assessing the proportionality the court should look to:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Rockwell Med., Inc. v. Richmond Bros., Inc.*, 2017 WL 1361129, at *1 (E.D. Mich. Apr. 14, 2017) (quoting Fed. R. Civ. P. 26(b)(1)).

As explained in *Wilmington Trust Co. v. AEP Generating Co.*, 2016 WL 860693, at *2 (S.D. Ohio Mar. 7, 2016), Courts have, in evaluating the proportionality issue, suggested that both parties have some stake in addressing the various relevant factors. *Id.* (citing *Oracle America, Inc. v. Google, Inc.*, 2015 WL 7775243, *2 (N.D. Cal. Dec. 3, 2015) (observing that "[n]either party submitted a proper analysis of

---

1. In deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and her order is overruled if the district court finds an abuse of discretion. 12 Wright, Miller & Marcus, Federal Practice and Procedure § 3069, 350 n. 20 (2d ed. 1997 & Supp. 2010) (citing cases). An abuse of discretion exists when the court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *Todd v. RBS Citizens, N.A.*, 2010 WL 3943545, at *2 (E.D. Mich. 2010) (citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)).

the Rule 26 proportionality factors" and that the moving party, Oracle, "did not fully address any of the proportionality factors, including the importance of the requested discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"—leaving the court in the position of having to "make its best judgment based on the limited information before it")). The Court observed that a responding party still must meet its burden of explaining how costly or time-consuming responding to a set of discovery requests will be, because that information is ordinarily better known to the responder than the requester. *Id.* However, once that information is presented, both sides are required to address the issue of proportionality, "especially since the requesting party can explain as well as the responder—and perhaps better—why the information it is seeking is important to resolving the case and why it would be a good use of the other party's resources to search for it." *Id.*

C. Motion for Protective Order Regarding Subpoenas Served on Defendants' Banking Institutions (Dkt. 206)

State Farm maintains that the Court has already determined that the bank subpoenas are proportional to the needs of the case. (Dkt. 208, Pg ID 7706–08). As the Court's June 16, 2016 Order noted, defendants had explicitly argued that the subpoenas were burdensome, claimed less than 209 patients were at issue, and presented proportionality concerns. (Dkt. 167, Pg ID 5306, 5310–11). The Court held that defendants could not substantiate any argument premised on undue burden, and moreover, "defendants make no claim, nor can they, that the discovery sought [i.e., financial information through bank subpoenas] is entirely irrelevant in this litigation." *Id.* Pg ID 5312. While the Court

ultimately held that the bank subpoenas did not fit within the framework of Phase 1, this Court concluded that they "seem[ ] appropriate for and should be permitted during the next phase of discovery." *Id.* Pg ID 5312. While State Farm observations regarding the content of the Court's earlier orders is correct, the issue framed for the Court at that time was whether a category of discovery previously assigned to the second phase of discovery was appropriate to pursue at that time. Thus, the undersigned's observation regarding the general relevance of that particular category of discovery was not intended as a definitive or unqualified blessing of the specific contents of any particular financial records subpoena at issue, and the undersigned believes it is appropriate for the Court to engage in a complete proportionality analysis of the same at this time.

1. Amount in controversy

██ According to State Farm's complaint, which has not been reduced in scope, there is at least $1 million at issue in this case, and the potential for a multimillion verdict with treble damages. Notably, during the pendency of these motions, Judge Borman issued an order denying State Farm's motion to strike a statement submitted by defendants, but also clarifying the fact that, as far as the Court is concerned, 209 claims remain pending in this case, as set forth in the complaint. (Dkt. 225) (March 28 Order). Judge Borman's conclusion affects the proportionality argument posed by defendants in this case. Indeed, defendants primary argument on why the bank subpoenas are not proportional relates to the number of claims at issue, and thus, the amount in controversy. (Dkt. 206, Pg ID 7593–96). In the view of the undersigned, the significance of this argument has been greatly diminished, if not foreclosed by Judge Borman's March 28 Order. Furthermore, de-

fendants do not connect the dots as to how any reduction in the number of claims at issue impacts the scope of the subpoenas. That is, defendants have not sufficiently explained how State Farm could or should narrow the subpoenas to reflect any reduction in the claims at issue.

2. Importance of the issues at stake and the importance of the discovery in resolving the issues at stake.

■ State Farm contends that the bank subpoenas seek critical information. State Farm argues that it is not required to rely on defendants to provide complete information on how their fraud scheme operates, including critical information about the relationships and motivations among defendants and other participants. In fact, State Farm maintains that defendants have not produced the documents that State Farm seeks from the banks. Defendants counter that the subpoenas are unnecessary, and in support of that argument, they cite 11 document requests that State Farm served on them for the same or similar documents. (Dkt. 206, Pg ID 7596). However, according to State Farm,

defendants' responses to these document requests underscore its need to obtain bank records from the banks themselves. Specifically, of the 11 requests, defendants objected to six of them, (*see* Dkt. 190, Ex. 3, Pointe's Revised Answers to RFPs 14, 16, 19, 22, 27, 41), and in response to one other, defendants claimed to have no responsive documents. *Id.* 30. State Farm also insists that defendants have not been truthful or forthcoming about the relationships between and among the defendants and other entities.[2] According to State Farm, other defendants (including Bazzi, Pointe, and Medical Evaluations) have refused to provide responses that would shed light on the financial relationships between defendants or with third-parties involved in the scheme. Finally, according to State Farm, defendants do not try to and could not plausibly make the argument that health care and insurance fraud do not present issues of public importance because they do. *See Doe v. United States,* 253 F.3d 256, 267 (6th Cir. 2001) (noting public importance of combating health-care fraud).

2. For example, according to Pointe's tax returns, Bazzi is the majority owner of Pointe, with a 60% ownership interest. (Dkt. 209, Ex. 19). In Bazzi's answer to the complaint, which she filed six months earlier on June 15, 2015, she flatly denied having any ownership interest in Pointe. (Compare Dkt. 1 ¶¶ 13, 14 with Dkt. 116 ¶¶ 13, 14). Bazzi's co-counsel who did not prepare the filed answer subsequently informed State Farm's counsel that it was his "understanding that Ms. Bazzi owned an interest in Pointe and New Era.[.]" (Dkt. 209, Ex. 20, June 17, 2015 email from M. Cafferty to K. Kelley). A stipulation was thereafter filed confirming that Bazzi "owns an interest in Pointe ... and New Era [II.]" (Dkt. 128, Pg ID 4322). On December 18, 2015, Pointe provided verified answers to interrogatories to State Farm in which it stated that Bazzi was only a minority shareholder of Pointe, with a 25% ownership interest. (Dkt. 209, Ex. 7, Interrog. 2). Bazzi, in her Decem-

ber 18, 2015 verified answers to interrogatories, stated under oath that she had no relationship whatsoever with Pointe. (Dkt. 209, Ex. 9, Interrog. 9 (stating under oath that the only Defendant Bazzi has any "contract[ ], agreement[ ], financial or business arrangement[ ], and/or any other relationship" with is New Era II). On January 13, 2017, Bazzi revised her answers to interrogatories in light of Judge Borman's order ending Phase 1, and once again she has denied having any ownership interest in Pointe. (Dkt. 209, Ex. 17, Interrog. 13. In addition to Bazzi's ownership of Pointe, Medical Evaluations answered in discovery that Beale is Medical Evaluations' 100% owner and that it has no relationship with any other defendant, (Dkt. 209, Ex. 11, Interrogs. 2, 12), when, in fact, evidence establishes that Bazzi and El–Sayed own and/or control Medical Evaluations. (Dkt. 171, Ex. A).

In the view of the undersigned, State Farm has come forward with supporting evidence that the discovery sought is important to resolving key issues at stake in this case and that the issues at stake (health care fraud) is important. Defendants, on the other hand, do little to address this issue, focusing solely on burden and the potential for duplication. Thus, the factor weighs in favor of permitting the bank subpoenas to go forward.

3. Access to relevant information

■ Defendants also argue that the documents sought by the bank subpoenas are duplicative of the documents sought during Phase I. (Dkt. 206, Pg ID 7596–99). In response, State Farm argues that even if it could obtain financial information from defendants and this case did involve fewer than 209 patients, the bank records would still be discoverable. To the extent that defendants have produced financial information, there may be some duplication. However, State Farm is not limited to obtaining financial information directly from defendants. And, defendants have not sufficiently supported their argument that the discovery is so duplicative of discovery done in Phase I that it should not be permitted in Phase II. Even assuming for the sake of argument that this argument is not foreclosed by Judge Borman's previous decision permitting the bank subpoenas to go forward in Phase II (Dkt. 174), it is simply not supported by any evidence.

Moreover, State Farm asserts that the sought after bank records are expected to shed light on the defendants' relationships with one another and third parties involved in the RICO scheme, thus rendering them essential to proving defendants' fraud and the alleged RICO enterprise. More particularly, information from bank records will illuminate the scope and details of the fraud scheme, the involvement and relationships among defendants and related third parties involved in the scheme, how the fraud scheme operated, the structure of the RICO enterprise, and who owns and controls each of the defendant entities as well as who stands to profit from the scheme. *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 10572229, at *3 (denying defendants' motion to quash subpoenas requesting bank records of defendants and their nonparty spouses, holding that State Farm had provided "myriad valid explanations" for the relevance of the bank records, including measuring the scope of the fraud, revealing additional potential parties and witnesses, showing motive for the alleged fraud and civil RICO conspiracy, and proving its damages); *State Farm Mut. Ins. Co. v. Policherla*, 2009 WL 2170183, at *3, *4 (same). Further, State Farm does not otherwise have access to this relevant bank information based on the discovery produced thus far by defendants, thus necessitating the subpoenas to the banks. Thus, this factor weighs in favor of allowing the bank subpoenas to go forward.

4. Burden and expense versus the benefits and parties' resources.

■ At the January 10, 2017 conference the Court directed defendants to identify with specificity the burden the bank subpoenas would impose on them. Yet, as State Farm points out, they make only a passing reference to burden in the introduction section of their motion. Indeed, defendants merely state that the "cost of storing and processing the deluge of documents" would be burdensome. (Dkt. 206, Pg ID 7585). Notably, at the telephone conference on January 10, 2017, defendants' counsel said they planned to provide the Court with a written estimate from a vendor regarding these costs. He did not. Without more, defendants' assertion is entirely undeveloped and exacerbated by the fact that they cite no case law for the

proposition that they can object to a non-party subpoena based on burden to them. Consequently, defendants have failed to articulate and support any claim of burden or significant impact on its resources.

On balance, State Farm has articulated support for the proportionality factors, including; (1) the importance of the issues at stake in the action (healthcare fraud); (2) the amount in controversy (which includes all 209 RICO events, treble damages, and the potential for a multi-million dollar verdict); (3) the parties' relative access to relevant information (State Farm has demonstrated that it has not been able to obtain the full picture of defendants' finances to fully investigate and support a RICO scheme); (4) the parties' resources (though defendants challenge the strain on their resources that the subpoenas will cause, they did not put forth specific evidence despite suggesting that they would provide such evidence at the January 10 conference), (5) the importance of the discovery in resolving the issues (financial information such as that sought from defendants appears to be primary means of proving a RICO scheme); and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Overall, the weighing of the proportionality factors tip well in favor of State Farm and permitting the bank discovery to go forward. Thus, the motion for protective order is **DENIED**.

C.  Motions to Quash and for Protective Order by Get Well Transportation and Affiliated Diagnostic of Oakland (Non–Parties) (Dkt. 180, 183)

In their motions to quash and for protective order, the Non–Parties maintain that State Farm has not established a connection of Get Well or Affiliated Diagnostic to the parties in this lawsuit or the scheme at issue. Thus, they maintain that State Farm cannot show that their bank information is even relevant to this lawsuit.

They argue that this very issue was addressed by the Court in another RICO case filed by State Farm by its present counsel in *MedCity Rehab. Servs., LLC v. State Farm Mut. Auto Ins. Co.*, 2013 WL 1898374 (E.D. Mich. May 7, 2013). In *MedCity*, State Farm subpoenaed bank records for MedCity Rehab Services, an entity, Dr. Teklehaimanot, a doctor, and Carl Collins, III, an attorney, who apparently owned MedCity Rehab. The Court granted MedCity's motion to quash the subpoena for non-party bank records sought and ruled that "to the extent the subpoenas seek financial information regarding Collins' and Dr. Teklehaimanot's personal bank accounts, such a request is overly broad. Therefore, the Court quashes this aspect of the bank subpoenas." *Id.* at *22. The Non–Parties argue that State Farm's allegations in *MedCity* are nearly identical to those made in this case, namely that State Farm was fraudulently induced to pay no-fault benefits and the complaint does not allege any other act that would implicate the Non–Parties' financial information. Accordingly, they maintain that their financial information is not relevant or discoverable since, in this case, as in *MedCity*, State Farm's subpoenas are overly broad, seek production of irrelevant materials, are not reasonably calculated to lead to the discovery of admissible evidence and should be quashed as to Get Well and Affiliated Diagnostic. In response to this argument, State Farm points out that the *MedCity* court *denied* the portion of the motion to quash as to corporate bank records and quashed the subpoena only as to the personal financial records of individuals.

State Farm contends that much of the available evidence indicates that Get Well is owned and/or controlled by defendant Bazzi and establishes that it serves a key role in the fraudulent scheme by providing transportation (with exorbitant fees) to de-

fendants' patients to ensure that patients continue to receive unnecessary treatment and to inflate claims. Approximately 46% of the patients given disability certificates by the prescribing clinics have received transportation from Get Well, and 85% of the patients given disability certificates received transportation from either Get Well or Transport Us. (Dkt. 1, Exs. 1 and 2). Further, though public filings indicate that Hala Makki a/k/a Moussa ("Makki") is Get Well's sole owner, officer, and manager (Dkt. 190, Ex. 3, Corporate Filings) and although Makki has testified that she did not know Bazzi (Dkt. 190, Ex. 2, 9/17/2009 Dep. Tr. of H. Makki at 49:23–25), Makki and Bazzi nonetheless have an intertwined personal and business history. Makki was formerly married to Bazzi's first cousin, and is an "old friend" of Bazzi's sister. (Dkt. 190, Ex. 7, 12/4/2009 Dep. Tr. of F. Chehab at 12:21–13:3). Makki has worked for several of Bazzi's entities, including New Era PT Services, P.C. ("New Era II") and Medical Evaluations & Testing, P.C. ("Medical Evaluations I"). (Dkt. 190, Ex. 8, New Era II Schedule K–1s to H. Makki; Ex. 9, 12/15/2009 Dep. Tr. of J. Parker at 35:6–37:9). A doctor who worked at Defendant Medical Evaluations P.C. ("Medical Evaluations") testified that Makki and Bazzi were his marketers and worked together. (Dkt. 190, Ex. 10, 8/15/2008 Dep. Tr. of I. Lutwin at 16:8–23; 21:6–9). Makki testified that Get Well received extensive patient referrals from clinics owned and/or controlled by Bazzi and/or other members of the Management Group. (Dkt. 190, Ex. 4, 8/31/2009 Dep. Tr. of H. Makki at 29:5–13).

In light of the interconnectedness described above, State Farm maintains that Get Well's bank records will shed light on Get Well's role in the scheme and among other things: (a) establish who owns and controls Get Well; (b) establish connections with defendants; (c) establish, through financial records, the role of Get Well as the mechanism to ensure patients appear for treatment and the source of substantial profits far in excess of what should be appropriately billed for moving fully ambulatory patients to and from their appointments; (d) reveal additional potential parties and witnesses; (e) provide evidence of motive; and (f) help prove damages.

State Farm also explains in detail how facilities that perform MRIs, including Affiliated Diagnostic, participate in the fraud scheme that is the subject matter of this lawsuit. According to State Farm, Affiliated performs unnecessary MRIs on patients in order to enrich defendants, rather than to address any legitimate need of particular patient. As described in Exhibit 1, Affiliated almost always performed MRIs on multiple regions of the spine and billed State Farm Mutual excessive sums for those MRIs. (Dkt. 193, Ex. 1). Affiliated regularly charged $4,950 for MRIs performed on each spinal region, despite having represented in its Certificate of Need submitted to the Michigan Department of Community Health that the average MRI charge would be $425 and the average cost of each MRI was $261. (Dkt. 193, Ex. 3).

State Farm also maintains that there is sufficient evidence to establish that Bazzi owns and controls Affiliated Diagnostic. On paper, Affiliated is owned and controlled by Warren Ringold, M.D. and Nesreen Bazzi ("Nesreen"), who is Bazzi's daughter. In public filings with Michigan's Department of Licensing and Regulatory Affairs, Ringold is identified as the organizer, member, resident agent, and managing partner of Affiliated. (Dkt. 193, Ex. 4) (Affiliated Diagnostic corporate documents). Ringold has testified that he is Affiliated's "physician manager" and owns 12.5 percent of Affiliated Diagnostic, and that Nesreen Bazzi owns the remaining 87.5 percent. (Dkt. 193, Ex. 5, Ringold

Dep. 6:1–6, 7:7–15 (Dec. 1, 2014); Ex. 6, Ringold Dep. 10:6–8, 20:5–8 (Nov. 24, 2014). However, State Farm maintains that strong evidence shows that it is Bazzi, not Ringold or Nesreen, who actually owns and/or controls Affiliated. First, evidence suggests that Bazzi's daughter, Nesreen, Affiliated's purported majority shareholder, does not and cannot operate the business. Bazzi herself has testified that Nesreen was diagnosed with "a false tumor in her head"—a medical condition, also referred to as pseudotumor similar to those caused by large brain tumors. As a result of Nesreen's medical condition, Bazzi testified, Nesreen "could not function [or] work" requiring Bazzi and Nesreen's husband, Youssef Bakri, to take "care of [Nesreen's] business, not her. (Dkt. 193, Ex. 7, Bazzi Dep. 78:3–79:3 (Jan. 22, 2003)). Ringold himself has testified that Nesreen was "100 percent passive [concerning Affiliated]. She doesn't come there...She doesn't even come around. (Dkt. 193, Ex. 6, Ringold Dep. 35:11–14). State Farm also points to evidence that Bazzi's use of Nesreen's name to conceal her ownership and control of Affiliated Diagnostics is consistent with her history of using her family members to conceal her ownership and control of other entities to provide healthcare services to auto accident victims. (*See* Dkt. 193, Pg ID 7287–89, Exs. 6, 8–11).

■ In the Court's view, State Farm has sufficiently tied Get Well and Affiliated Diagnostic to the scheme and to defendants such that the discovery should be permitted. Notably, there is significant case law to support State Farm's position on relevance and proportionality. For example, the case of *Metro Medic Transp. Inc. v. State Farm Mut. Auto. Ins. Co.*, (E.D. Mich. Aug. 13, 2013) has virtually indistinguishable facts. *Metro Medic* was a "miscellaneous action" related to *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, Case No. 12–11500, 2013 WL 10572229. In the underlying *Physiomatrix*

litigation, State Farm Mutual subpoenaed bank records of two nonparty transportation companies. The transportation companies moved to quash the bank subpoenas on several grounds, including "a privacy right in their financial information." (Dkt. 190, Ex. 20, slip op., Pg ID 97). The *Metro Medic* court, citing to Supreme Court and Sixth Circuit precedent that has "consistently held to the contrary," and noting that a party seeking to quash a subpoena for commercial information "bears a heavy burden," found that the transportation companies "have no privacy right in their financial information such that the Court is required by Rule 45 to quash State Farm Mutual's subpoenas." *Id.* at *2, 3; *see also State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 224 (E.D. Mich. 2016) (denying nonparty's motion to quash bank subpoena).

And, as with the above discussed motion, State Farm has articulated support for all of the proportionality factors, including the importance of the issues at stake in the action (healthcare fraud), the amount in controversy (which includes all 209 RICO events, treble damages, and the potential for a multi-million dollar verdict), the parties' relative access to relevant information (State Farm has no other means of obtaining the financial information necessary to fully investigate and support a RICO scheme), the parties' resources (the Non– Parties have not articulated any significant burden), the importance of the discovery in resolving the issues (financial information such as that sought from the Non–Parties appears to be primary means of proving a RICO scheme), and whether the burden or expense of the proposed discovery outweighs its likely benefit. Overall, the weighing of the proportionality factors tip far towards State Farm and permitting the bank discovery on the Non–Parties to go

forward. Thus the motions to quash and for protective order are **DENIED.**

**IT IS SO ORDERED.**

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R.Civ.P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.